## STATE OF NEW JERSEY, PLAINTIFF, v. ANTONIO VEGA, DEFENDANT.

Superior Court of New Jersey
Law Division Criminal
Mercer County

Decided November 27, 1984.

*Janetta Marbrey* for state (*Philip S. Carchman,* Prosecutor, Mercer County).

*Charles J. Casale, Jr.* for defendant.

BARLOW, J.S.C.

On June 10, 1984, at 9:05 in the evening, a Trenton police officer observed a motor vehicle being driven without its head-

lights on. The vehicle then made a wide left turn at an intersection, at which time the officer stopped it and requested the operator, defendant Vega, to produce his driving credentials. Defendant was unable to produce a license or insurance card and was slow in producing his registration. The officer detected an odor of alcohol on the driver's breath and in response to questioning by the officer the driver admitted he had several beers; his eyes were bloodshot and his pupils did not react to the officer's flashlight. He was ordered out of his vehicle and as he exited he was unsteady and unable to perform the "finger to nose test" requested by the officer. He was then placed under arrest, handcuffed and transported to police headquarters. At the scene of the arrest defendant was not given his *Miranda* warnings.

At headquarters he was searched and a small manila envelope containing suspected marijuana was taken from his pants pocket.[1] Defendant was then read the statutory requirements for the taking of a breathalyzer test, *N.J.S.A.* 39:4–50.2, and informed of the penalties that would be imposed in the event he refused to take the test. *N.J.S.A.* 39:4–50(a).

These proceedings were recorded on video tape. It was clear at this point the defendant refused to take the test and informed the officer that he wanted an attorney.[2] He was told by the officer that he had no right to consult with an attorney. Despite his repeated statements to the effect that he did not want to take the test, defendant was asked a number of questions from a standardized administrative form (apparently used routinely when a defendant consents to take the breathalyzer prior to the test being administered). Many of defendant's responses were inculpatory. In addition, defendant was

---

[1] Defendant does not contest the legality of the seizure of the manila envelope from his person at the station since it was incidental to a valid arrest.

[2] Defendant had recently been convicted of drunk driving and was facing a possible second conviction.

required to perform several psycho-physical tests with incriminating results.

Defendant does not challenge the lawfulness of the motor vehicle stop, however, he contends that once he was placed under arrest at the scene of the stop, he should have been given his *Miranda* rights. *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). He further contends that at the police station, despite his repeated requests to consult with an attorney, he was required to answer questions and perform a number of balancing tests, all of which should be suppressed.

Defendant relies upon the recent decision in *Berkemer v. McCarty*, — *U.S.* ——, 104 *S.Ct.* 3138, 82 *L.Ed.*2d 317 (July 2, 1984), in which the United States Supreme Court held *inter alia*, "that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda*, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." The Court made it clear that the procedural safeguards enunciated in *Miranda* only arise at a road side stop when the treatment by the officer of the driver is "the functional equivalent of formal arrest."

As noted previously the stop in question occurred on June 10, 1984, prior to the decision in *Berkemer v. McCarty*, *supra*, which was rendered on July 2, 1984. Defendant argues that this Court should give limited retroactive application to *Berkemer* to the present case, as it was pending at the time of that decision, and therefore, suppress any statements or conduct engaged in after the defendant was arrested as he did not receive his *Miranda* warnings.

In determining the question of retroactivity, this court must decide whether or not the *Berkemer* decision is a new principle of law representing a clear break with the past. *United States v. Johnson*, 457 *U.S.* 537, 549, 102 *S.Ct.* 2579, 2587, 73 *L.Ed.*2d 202 (1982). In *State v. Gervasio*, 94 *N.J.* 23 (1983), our Supreme Court adopted the clear break with the past test enunciated in *Johnson*. In *Gervasio* the court held

that *Delaware v. Prouse*, 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L.Ed.* 2d 660 (1979), represented a clear break with State Constitutional adjudications and therefore was not required to be given retroactive effect. Relying on *Johnson*, the Court ruled that when a decision constitutes a sharp break with prior case law, prospective application of the new rule is required because of the "reliance by law enforcement authorities on the old standards and [the] effect on the administration of justice of a retroactive application of the new rule." *Gervasio*, supra, 94 *N.J.* at 26.

Defendant contends that *Berkemer* is not a clear break with the past since the United States Supreme Court has long held that once a person is the subject of custodial interrogation, he must be given his *Miranda* rights. Accordingly, the decision in *Berkemer* is merely a reaffirmation of that rule in the context of a custodial interrogation following an arrest for a motor vehicle violation. This argument has a fatal flaw. The law in New Jersey, prior to *Berkemer*, clearly was to the contrary with regard to motor vehicle arrests. Our Supreme Court in *State v. Macuk*, 57 *N.J.* 1 (1970), held that "absent contrary indication by the United States Supreme Court *Miranda* rules are inapplicable to all motor vehicle violations." *Id.* at 15–16. *See also State v. Lewin*, 163 *N.J.Super.* 439 (App.Div.1978) [statements obtained during police investigation at the scene and at police headquarters concerning circumstances of the accident and consumption of intoxicants held admissible]; and *State v. Mann*, 171 *N.J.Super.* 173 (App.Div.1979) [*Macuk* applied although vehicle was believed to be stolen and defendant was stopped for further investigation].

▮ Within the schema of constitutional adjudication, where the United States Supreme Court has not acted, our Supreme Court was entitled to make its own determination whether the principles in *Miranda* would apply to motor vehicle arrests in this state. *State v. Dilley*, 49 *N.J.* 460, 470 (1967); *State v. Coleman*, 46 *N.J.* 16, 37 (1965). Indeed, certiorari was granted in *Berkemer* specifically "to resolve [the] confusion in the

Federal and state courts regarding the applicability of our ruling in *Miranda* to interrogations involving minor offenses and to questioning of motorists detained pursuant to traffic stops." —— *U.S.* at ——, 104 *S.Ct.* at 3144, 82 *L.Ed.*2d at 326.

■ The Court, therefore, concludes that the holding in *Berkemer* must be given prospective application only and does not apply to the present case.

It should be noted that even if *Berkemer* were to be given limited retroactive application to the present case, defendant's statements at the scene of the stop, prior to being placed under arrest, are still admissible. The Court in *Berkemer* emphasized that motorist stops are temporary and brief in nature and commented:

> "the usual traffic stop is more analogous to a so-called '*Terry* stop', see *Terry v. Ohio*, 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968), than to a formal arrest....
>
> The comparatively non-threatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*. [*Berkemer*, supra, 104 *S.Ct.* at 3150–51.]

Justice Marshall, delivering the opinion of the Court in *Berkemer*, made it clear that a single police officer asking a modest number of questions and requesting the performance of simple balancing tests "at a location visible to passing motorists, cannot be characterized as the functional equivalent of formal arrests." *Id.* at 3152.

The defendant's final contention is that his statements and conduct at the station house should be suppressed as his requests to consult with counsel were denied, in violation of his Sixth Amendment right to counsel.

■ There is no question that defendant was not entitled to consult with counsel in order to make his decision as to whether he would take the breathalyzer. In *State v. Pandoli*, 109 *N.J.Super.* 1, 4 (App.Div.1970), the Appellate Division held, "as a matter of law, defendant had no right to have the advice of an attorney before determining whether he would accede to the

test, insofar as the sanction of revocation for refusal is concerned." Moreover, the breathalyzer test is nontestimonial in nature and therefore, does not involve the constitutional prohibition against compelled testimony. *Schmerber v. California*, 384 *U.S.* 757, 86 *S.Ct.* 1826, 16 *L.Ed.*2d 908 (1966). *State v. Kenderski*, 99 *N.J.Super.* 224, 228–29 (App.Div.1969).

■ Likewise, the nonverbal conduct which defendant was required to engage in, i.e., various psycho-physical tests, would not be subject to suppression as they were also nontestimonial in nature. *Macuk, supra*, 57 *N.J.* at 14.

■ In addition to the breathalyzer test, defendant was questioned from a standardized form used in conjunction with the breathalyzer (this form has no statutory authorization). This questionnaire clearly elicited testimonial responses, a number of which were incriminatory: i.e., would be used against him in a subsequent drunk driving hearing. Therefore, once defendant in that custodial setting invoked his right to counsel it was improper for the arresting officer to ignore that request. Further questioning concerning the incident for which he was arrested should have been terminated at that point. *Edwards v. Arizona*, 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378 (1981). Accordingly, those verbal responses must be suppressed.