Barbara D. CHRISTENSON, Petitioner and Appellant,

v.

JOB SERVICE NORTH DAKOTA and Civilian Personnel, Minot Air Force Base, Respondents and Appellees.

Civ. No. 11330.

Supreme Court of North Dakota.

Jan. 7, 1987.

Bruce A. Schoenwald, of Eaton, Van de Streek & Ward, Minot, for petitioner and appellant.

Sidney Hertz Fiergola, Asst. Atty. General, Bismarck, for respondents and appellees.

VANDE WALLE, Justice.

Barbara Christenson appealed from a district court judgment upholding a decision by Job Service North Dakota (Job Service) denying her request for unemployment benefits. We affirm.

Prior to her resignation on October 11, 1985, Barbara had been employed as a full-time civil service clerical worker at the Minot Air Force Base for eleven years. Commencing in the latter months of 1984, Barbara experienced some medical problems involving abdominal and chest pains which her doctor determined were related to the stress of her work environment. These medical ailments caused Barbara to be absent from work from August 22, 1985, until she returned to work on September 9, 1985, with her doctor's approval. Her doctor also advised that she "try and switch jobs if at all possible," and her employer attempted to accommodate her, but there were no suitable open positions for which Barbara qualified for transfer.

Barbara received two unacceptable job-performance ratings, one during July 1984 and the other during June 1985. On October 2, 1985, she received a notice of proposed removal to which she did not respond. Barbara submitted a letter of resignation effective October 11, 1985.

Barbara filed a claim with Job Service for unemployment compensation asserting that she was entitled to benefits because she suffered from a work-related illness which left her with no reasonable alternative but to resign. Job Service determined that although Barbara had experienced certain medical ailments they did not preclude her from continuing her job and that she therefore voluntarily left her employment without good cause attributable to the employer, which disqualified her from receiving unemployment benefits under Section 52–06–02, N.D.C.C.

Barbara raises two issues on appeal:

I. Whether Barbara is entitled to unemployment benefits because she suffered from a work-related injury which left her with no reasonable alternative but to resign from her employment; and

II. Whether Barbara is entitled to unemployment benefits because she voluntarily resigned in the face of certain discharge.

The process by which we consider an appeal from a district court judgment reviewing an administrative agency decision is well settled and is reiterated in our recent decision of *Skjefte v. Job Service*, 392 N.W.2d 815, 817–818 (N.D.1986):

"When we consider an appeal from a judgment of the district court reviewing the decision of an administrative agency, we review the decision of the agency, not the decision of the district court. Our review of administrative decisions is governed by Section 28–32–19, N.D.C.C., and that review requires us to determine: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; and (3) if the agency decision is supported by the conclusions of law. The standards we use in making such a determination have been summarized as follows:

"1. We do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence.

"2. We exercise restraint when we review administrative agency findings.

"3. It is not the function of the judiciary to act as a super board when re-

viewing administrative agency determinations.

"4. We will not substitute our judgment for that of the qualified experts in the administrative agencies." [Citations omitted.]

The statutory authorization and regulation of unemployment benefits is provided under Chapter 52–06, N.D.C.C. Pursuant to Section 52–06–02(1), N.D.C.C., an applicant is disqualified from receiving unemployment benefits if she has "left ... employment voluntarily without good cause attributable to the employer." However, the subsection further provides that the disqualification does not apply "if the bureau determines that the individual left ... employment with no reasonable alternative because of a work-related injury or illness." Barbara asserts that this exception to the disqualification provision applies to her case. She contends that a reasoning mind could not find otherwise and therefore Job Service's contrary finding is not supported by a preponderance of the evidence. We disagree.

Barbara's personal physician, Dr. C. Swenson, in a report dated October 18, 1985, indicating Barbara was last examined on September 3, 1985, stated that she had experienced chest pain "aggravated by stress at work" and advised that she attempt to switch jobs but that she "could return to work" on September 9, 1985. A subsequent report, dated November 4, 1985, which was submitted by Dr. Swenson after Barbara's resignation, states that Barbara experienced chest pain "related to the stress of her work" and that she was advised to "stop work." On its face the latter report appears to be inconsistent with Dr. Swenson's first medical report stating that Barbara could return to work.

In *Claim of Bromley*, 304 N.W.2d 412, 417 (N.D.1981), we stated:

"If a report contains information directly supporting both denying and granting the claim and is not clarified by the Bureau, the discrepancies become critical when, as in this instance, the 'maker' of the inconsistent report is unavailable at the formal hearing to explain or clarify the discrepancies and the Bureau relies upon only one part of the report to deny the claim. This is especially true where all other reports, including the Bureau's investigative report, either support or are reconcilable with the claimant's statement and the claimant's testimony at the formal hearing reflects a factual situation which, if true, would entitle him to benefits, and the claimant also presented medical testimony pointing out the deficiencies in the Bureau's medical records."

It has been suggested that this rationale should apply to Job Service in those instances in which the claimant's doctor gives contradictory reports. See *Otto v. Job Service*, 390 N.W.2d 550, 553 (N.D. 1986) (Vande Walle, J., concurring). Although Job Service did not request a direct response from the doctor as to the reason for the inconsistent reports, in this instance all other reports are not reconcilable with those of Christenson's doctor. In addition to these medical reports from Dr. Swenson, Job Service also had evidence before it that Barbara was examined prior to her resignation by an Air Force flight surgeon, Dr. Gagliardi, who concluded that Barbara could be retained in her position and that she was not suffering from an illness which would preclude her from performing her job duties.

Having reviewed the record upon which Job Service based its decision, we conclude that its findings were supported by a preponderance of the evidence, that its conclusions of law are sustained by the findings of fact, and that its decision is supported by its conclusions. There is evidence in the record upon which a reasoning mind could conclude, as did Job Service, that Barbara did not suffer from a work-related illness which required her to resign from her position and to further conclude that Barbara voluntarily left her employment without good cause attributable to her employer.

In *Carlson v. Job Service North Dakota*, 391 N.W.2d 643 (N.D.1986), we held that an employee who resigns rather than await certain discharge is not disqualified from receiving unemployment compensation. Barbara asserts on appeal that she is also entitled to unemployment benefits under the *Carlson, supra,* rationale. There are two reasons why Barbara cannot be afforded relief on this ground. First, Barbara did not raise this matter before Job Service as a ground upon which she was claiming unemployment benefits. Consequently, she has not preserved this issue for appeal. See *Skjonsby Truck Line, Inc. v. Elkin,* 325 N.W.2d 271 (N.D. 1982); *Petition of Village Board of Wheatland,* 77 N.D. 194, 42 N.W.2d 321 (1950). Secondly, Barbara testified in relevant part:

"Q. ... Now, they also said that on October 2 you were notified of your going to be removed, which I mean they're going to discharge you, I guess.

"A. No, that's not correct. They did give me a proposed notice, which I had an opportunity to answer to, but since that was subsequent to my decision to retire—or to resign, I felt that it was of no great—

"Q. Well, when did you resign?

"A. As of the 30th of September.

"Q. Well, you put in your time until October 11.

"A. I know, I gave them till then that I would leave. But my decision was made the 30th of September.

\*   \*   \*   \*   \*   \*

"A. I filled it [the resignation form] out at home, I filled it out at home, signed it and dated it, and took it to Civilian Personnel.

"Q. But you held on to it for awhile until you got this intended removal notice.

"A. Yes.

"Q. And then after that, you turned it in to Mr. Hughes.

"A. Yes, um-hmm. The removal notice had nothing to do with it, because I had had several threatening-type letters from Mrs. Klein and notices, and I did not consider that any more than just another threat."

Barbara's testimony constitutes an admission that her resignation was not influenced by or the result of the notice of intended removal which she received. This testimony would, in itself, preclude her from recovering benefits on a theory that she involuntarily resigned because she was going to be discharged.

The judgment of the district court upholding Job Service's denial of Barbara's request for unemployment benefits is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.