**Jeffrey Michael KUNTZ, Appellant,**

v.

**STATE HIGHWAY COMMISSIONER, Appellee.**

Civ. No. 11273.

Supreme Court of North Dakota.

April 29, 1987.

Pulkrabek & Tuntland, Mandan, for appellant; argued by Thomas M. Tuntland.

Steven F. Lamb, Asst. Atty. Gen., State Highway Dept., Legal Div., Bismarck, for appellee.

MESCHKE, Justice.

Jeffrey M. Kuntz appeals from a district court judgment upholding the Highway Commissioner's decision to revoke his driver's license for two years, under §§ 39–20–04 and 39–20–05, N.D.C.C., for refusing to take an intoxilyzer test. We hold that a person arrested for driving under the influence of intoxicating liquor has a qualified statutory right to consult with an attorney before deciding whether or not to submit to a chemical test. We conclude that Kuntz was not allowed a reasonable opportunity

to do so, at his request, and that, therefore, his failure to take the test was not a refusal.[1] Accordingly, we reverse.

The facts of this case are important to our disposition of the legal issue and are not in dispute. Mercer County Deputy Sheriff, Kerry Kessler, stopped Kuntz after observing him drive his motor vehicle erratically. Kessler detected "a moderate odor of alcoholic beverage about [Kuntz's] breath," and he observed Kuntz unsatisfactorily perform a series of roadside sobriety tests. Kessler then informed Kuntz that he was "under arrest for driving while under the influence of alcohol and/or drugs." Kessler immediately advised Kuntz of his constitutional rights, specifically that he "had the right to remain silent, that anything he said could and would be used against him in a court of law, that he had the right to an attorney; if he could not afford one, one would be appointed for him."

Deputy Kessler took Kuntz to the Mercer County Jail in Stanton. There, in the booking room, subsequent proceedings were videotaped. After some preliminaries, Deputy Kessler informed Kuntz that his refusal to take an intoxilyzer test would result in automatic revocation of his driver's license. A dialogue between Kuntz and Kessler followed:

Officer: "Do you understand that? Will you take the test?"

[13 second pause]

Kuntz: "Can't I call my lawyer?"

Officer: "Yes or no. Will you take the test or not? If you take it, the most you can lose your license for is 91 days. If you refuse to take it, you automatically lose your license for a year, 364 days. There is no opportunity to get a work permit or nothing. It's up to you."

[16 second pause]

Officer: "Will you take the test?"

Kuntz: "Don't I get to call my lawyer first?"

Officer: "As soon as we're done with the test and with joint procedure, you can [call] whoever you like."

[18 second pause]

Kuntz: "Why can't I call him before?"

Officer: "That's not the way we do our typical procedures."

Kuntz: "I don't really know—does it really matter?"

Officer: "What's that?"

Kuntz: "Well—does it really matter?"

Officer: "Other than our normal procedures—no."

Kuntz: "Well then I'd like to call my lawyer."

Officer: "... if you take the test ... cause if you refuse to take this test you automatically lose your license for a period of one year. If you take it, the most you can lose your license for is 91 days. Three months—and after the first month, you can apply for a work permit. But if you refuse to take the test you can apply all you want for a work permit and you won't be granted one. The Judge won't grant you a work permit if you refuse to take the test."

Kuntz: "I still should be able to call my lawyer, though, shouldn't I?"

Officer: "As soon as we're done with the test and the proper procedure, you can call your lawyer or whoever you want."

Kuntz: "What does it matter if I call him now?"

Officer: "Yes or no. Are you going to take the test?"

Kuntz continued to verbalize his request to call his lawyer before deciding whether to take the test and repeatedly questioned Officer Kessler why he was not allowed to

---

1. The hearing officer concluded that Knutz "failed to submit" to the test. The statutes apply to one who "refuses," to a "refusal" (§ 39–20–04, N.D.C.C.), for "refusing," and to a person who "refused" a test (§ 39–20–05(3) and (5), N.D.C.C.). We do not exclude any evidence, but we hold that the evidence of failure to take a test under these circumstances is not a "refusal." *Compare Westendorf v. Iowa Department of Transportation,* 400 N.W.2d 553 (Iowa 1987) which held that the exclusionary rule did not apply in an administrative proceeding to revoke a driver's license.

call his lawyer before, rather than after, taking the test. Kuntz did not take the intoxilyzer test, and as a result the Commissioner revoked his driver's license for a period of two years. Kuntz appealed the Commissioner's decision to the district court which upheld the license revocation.

On appeal Kuntz asserts that he had a statutory right, under § 29–05–20, N.D. C.C., to call an attorney before deciding to take the intoxilyzer test:

> "*29–05–20. Delay after arrest prohibited—Attorney.*— The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at his request, may visit such person after his arrest."

We agree with the rationale of those jurisdictions which have interpreted their right-to-counsel statutes as entitling a person arrested for driving under the influence to a reasonable opportunity to consult with an attorney before deciding to take a chemical test. *See State v. Vietor,* 261 N.W.2d 828 (Iowa 1978); *Prideaux v. State Dept. of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976). Although the statutory language construed in those cases is not identical with the language of § 29–05–20, N.D.C.C., we believe the import of those statutes is similar to ours, and the decisions applying those statutes are therefore instrumental and persuasive to our interpretation of § 29–05–20, N.D.C.C., and its application to this case.

In 1976, Minnesota law, Section 481.10, Minn.Stat., provided that a restrained person shall be entitled to consult with an attorney "as soon as practicable, and before other proceedings shall be had." In construing that provision the Minnesota Su-

preme Court in *Prideaux, supra,* concluded:

> "Although the Minnesota statute does not explicitly mention telephone calls and was drafted before automobiles were commonly used, it must be interpreted in accordance with the fundamental nature of the right it affords and the technological advance of our society. The importance of a driver's license and the binding decisions which must be made by the driver asked to submit to chemical testing make the chemical-testing process a 'proceeding' within the meaning of § 481.10 before which consultation with counsel is to be accorded." 247 N.W.2d at 393.

The Minnesota Supreme Court held that any person who is required to decide whether to take a chemical test has the right to consult with an attorney before making that decision "provided that such a consultation does not unreasonably delay the administration of the test. ... If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel." [2]

Section 755.17 of the Iowa Code provides that an arrested person shall be allowed to consult with an attorney "before preliminary hearing and arraignment ... without unnecessary delay after arrival at the place of detention." The Iowa Supreme Court in *State v. Vietor, supra,* held that this provision entitles an arrested person to have a reasonable opportunity, if requested, to speak with an attorney before being required to decide to take a chemical test. In so concluding the court described the "strange circumstances," substantially identical to those in this case, which under-

---

**2.** In 1978 the Minnesota legislature expanded the required implied consent advisory, in accord with *Prideaux, supra,* to inform the driver of the limited right to consult with an attorney before deciding whether to submit to chemical testing. Act of April 5, 1978, Ch. 727, § 3, 1978 Minn.Laws 788, 792–93.

In 1984, however, the Minnesota legislature deleted the advisory requirement provided by the foregoing 1978 amendment and changed the advisory to require that the driver be informed of a right to consult with an attorney "after

submitting to testing." Act of May 2, 1984, Ch. 622, § 10, 1984 Minn.Laws 1541, 1546–47. The Minnesota Supreme Court in *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512 (Minn. 1985), concluded that by enacting the 1984 amendment the legislature intended to abandon the *Prideaux, supra* right to counsel and the high court held that under the new law "... a driver arrested for DWI no longer has even a limited statutory right to consult with counsel before deciding whether to submit to chemical testing." 369 N.W.2d at 515.

lie the arrested person's desire and need to consult an attorney in such a situation:

"Peace officers find themselves in an anomalous position when attempting to implement the provisions of the implied consent law after making an OMVUI arrest. The license revocation which follows a refusal to submit to chemical testing is an administrative proceeding, to which, as already pointed out, the *Miranda* protections do not apply.... But when a chemical test is requested, the peace officer—and most often the arrestee as well—knows the results will be vital evidence in a later criminal trial.

"This leads to the strange circumstances facing us here. Upon Irvin's arrest, the officer advised him of his constitutional rights under *Miranda*. One of these is the right to counsel. Yet almost immediately the officer read to Irvin a statement from the implied consent form that he was *not* entitled to counsel.

"It is hard enough for us to reconcile these seemingly contradictory statements. It must be impossible to do so for one facing the necessity of making an immediate decision which later may be used to convict him of a crime." [Citation omitted.] 261 N.W.2d at 830–831.

In the later case of *Fuller v. State, Dept. of Transportation*, 275 N.W.2d 410 (Iowa 1979), the Iowa Supreme Court applied *Vietor, supra,* to a license revocation proceeding:

"The rationale of *Vietor* was that a defendant could not be required to make his election until he had consulted counsel. Therefore, if a defendant is denied this statutory right on request, he cannot be held to have refused a chemical test.

"If there was no refusal, the premise upon which the state may revoke a license under § 321B.7 is missing." 275 N.W.2d at 411.

Section 29–05–20, N.D.C.C., gives a person the right to visit with an attorney upon request "after his arrest." Officer Kessler's request of Kuntz to take the intoxilyzer test occurred after Kuntz's arrest and after Kuntz had been informed that he had a right to have an attorney. At the time he was asked to submit to the intoxilyzer test Kuntz had a statutory right to visit with an attorney. Kuntz was entitled to have a reasonable opportunity to consult with an attorney before deciding whether to take the intoxilyzer test, so long as that effort did not unreasonably interfere with the testing procedure under Chapter 39–20, N.D.C.C. Kuntz's exercise of that right by requesting to call his attorney before taking the test did not constitute a refusal for purposes of revoking his license under Chapter 39–20, N.D.C.C. *See Moore v. State, Motor Vehicles Div., Etc.*, 293 Or. 715, 652 P.2d 794 (1982); *Fuller, supra; Siegwald v. Curry*, 40 Ohio App.2d 313, 319 N.E.2d 381 (Ohio Ct.App.1974).

It oversimplifies to assert, as the brief for the State Highway Commissioner does, that "in civil proceedings there is no right to counsel." Surely, due process applies to civil matters. "[E]very man for any injury done him ... shall have remedy by due process of law...." Art. 1, Section 9, N.D. Const.

The United States Supreme Court has determined that the Due Process Clause of the United States Constitution applies to a state's suspension or revocation of a driver's license. *Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). Our determination, that a person has a limited right to consult with an attorney before deciding whether to take an intoxilyzer test, is underscored by constitutional due process principles. Justice Yetka, in his dissenting opinion in *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512 (Minn.1985), cogently urges that the right to consult an attorney before making such a decision is basic and fundamental:

"Most persons are confused about the many laws that exist. What the public usually understands, and indeed expects, is that if one is in trouble, the first thing to do is consult with a lawyer. That right is so basic, so fundamental, and secured over so many centuries of struggle with tyranny as to become sacred." 369 N.W.2d at 522.

*See also People v. Gursey*, 22 N.Y.2d 224, 239 N.E.2d 351, 292 N.Y.Sup.2d 416, 418–419, (N.Y.1968); *Siegwald, supra*, at 383–384.

Furthermore, the test results are admissible in both the license revocation proceedings and the criminal proceedings for driving under the influence. Section 39–20–08, N.D.C.C., declares a refusal to take a test admissible as evidence in both the civil and criminal proceedings. Thus, the civil and criminal consequences are so intermingled that they are not perceptibly different to a lay person. It is both obvious and understandable that Kuntz was perplexed as to why he could not consult with an attorney before deciding to take the test when he had been informed at his arrest that he had a right to an attorney.

The circumstances of this case are distinguishable from those in *Agnew v. Hjelle*, 216 N.W.2d 291 (N.D.1974), where this court upheld a license revocation for refusal to submit to a breathalyzer test. Allen Agnew, when asked if he would consent to the test, stated that he would do nothing until he talked to his attorney. Agnew was then allowed to call his attorney who also happened to be the city prosecutor. Upon conferring with Agnew the attorney explained that he could neither represent nor advise him. Agnew made no further request to talk with an attorney, and the breathalyzer test was never administered. On appeal Agnew asserted that he had become confused when he was first told that he could remain silent and had a right to consult with an attorney but was then told that his driver's license would be revoked if he did not submit to a breathalyzer test. In upholding the license revocation this court concluded that there was no evidence that Agnew was confused with regard to his rights. This court also refused to adopt the "confusion doctrine" in *Agnew, supra*, which would require an officer to inform an arrested person who had been advised about his constitutional rights that they do not apply to the taking of a chemical test for license revocation purposes.

Agnew was permitted to speak in person with the attorney of his choice before mak-

ing a decision to take a chemical test. To the contrary, Kuntz was not allowed to call his attorney. And, unlike Kuntz, Agnew did not claim that he had been denied a statutory right to confer with counsel. Consequently, the applicability of the statutory right to counsel was not at issue in *Agnew, supra*, nor in any of the following decisions of this court which considered the effect of not giving the so called *Miranda* advisory of constitutional rights and its effect on an arrest for driving under the influence: *See Pladson v. Hjelle*, 368 N.W.2d 508 (N.D.1985); *Hammeren v. North Dakota State Highway Commissioner*, 315 N.W.2d 679 (N.D.1982); *State v. Fields*, 294 N.W.2d 404 (N.D.1980).

Our determination that § 29–05–20, N.D. C.C., entitles an arrested individual to have a reasonable opportunity to consult with an attorney before deciding to take a chemical test is consistent with our recognition in *Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974), that an individual may, within a reasonable period of time, effectively reconsider a refusal to take a chemical test:

> "Since the accuracy of a chemical test under Chapter 39–20 does not depend upon its being administered immediately after an arrest, accident or other event, and thus a delay for a reasonable period of time while an arrested person considers or reconsiders a decision whether or not to submit to a chemical test will not frustrate the object of the Legislature in enacting Chapter 39–20, we hold that where, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or ex-

pense to the police, and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest." 224 N.W.2d at 557.

The right to consult with an attorney, like the right to reconsider a first refusal to take a chemical test, is a qualified right which cannot be used to materially hamper the process of administering the chemical test under Chapter 39–20, N.D.C.C. If the person arrested is unable to reach an attorney by telephone or otherwise within a reasonable time, he can be required to elect between taking the test and refusing it without the aid of an attorney.

We hold that if an arrested person asks to consult with an attorney before deciding to take a chemical test, he must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test. If he is not given a reasonable opportunity to do so under the circumstances, his failure to take the test is not a refusal upon which to revoke his license under Chapter 39–20, N.D.C.C.

Since Kuntz was not allowed a reasonable opportunity to try to consult with his attorney, after he asked to do so, the Commissioner's decision to revoke his license is reversed.

GIERKE and LEVINE, JJ., concur.

ERICKSTAD, Chief Justice, dissenting.

The basic philosophy of the Implied Consent Act is contained in the first sentence of Section 39–20–01, N.D.C.C., which reads:

"Any person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, *subject to the provisions of this chapter*, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcoholic, other drug, or combination thereof, content of the blood." [Emphasis added.]

I have not found any provision in Chapter 39–20, N.D.C.C., which requires that a person subject to Chapter 39–20 be permit-ted to consult with counsel before deciding whether or not to undergo such a test. There is certainly nothing in Section 39–20–04, N.D.C.C., which provides for the revocation of the privilege of driving a motor vehicle upon refusal to submit to testing which requires that a person subject to the Implied Consent Act be permitted to consult with counsel before deciding whether or not to refuse to take the tests provided for in the Act.

To judicially require now almost 28 years after the adoption of the Implied Consent Act between an arrest and testing the interposition of Section 29–05–20, N.D.C.C., which had its origin in the Code of Criminal Procedure of 1877, is a backward step. Section 29–05–20 reads:

"Delay after arrest prohibited—*Attorney*.—The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at his request, may visit such person after his arrest."'

In this case, no evidence has been submitted indicating that there was unnecessary delay in bringing Mr. Kuntz before a magistrate, or that Mr. Kuntz was prevented from contacting an attorney or securing an attorney's advice following his refusal to take this test.

It is especially interesting to note from the information contained in footnote one of the majority opinion that Minnesota, which is listed as one of the states that has interpreted its right-to-counsel statute as entitling a person arrested for driving under the influence a reasonable opportunity to consult with an attorney before deciding to take a chemical test, has now concluded after its Legislature amended its act to provide that the driver be informed of a right to consult with an attorney "after submitting to testing," that a driver arrested for DWI no longer has even a limited statutory right to consult with counsel before deciding to submit to chemical testing. *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512 (Minn.1985) at 515.

I would so construe our Implied Consent Act, inasmuch as Section 39–20–01, N.D.

C.C., states that a person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent to taking the test subject only to the provisions of Chapter 39–20. If the Legislature had intended to interpose such a right to consult with counsel between being arrested and being tested, or to being asked to submit to testing, the Legislature surely would have amended the Implied Consent Act in the years that have expired between the adoption of the Implied Consent Act and the occurrence of the facts in this case.

In conclusion, I see no good reason for distinguishing *Agnew v. Hjelle*, 216 N.W.2d 291 (N.D.1974), to limit its rationale to the specific facts of that case. What I say here today is consistent with my dissent in *Lund v. Hjelle*, 224 N.W.2d 552 at 557–560.

I believe the majority has taken a different direction, which is a proper function of the majority of this Court, and one I would not be opposed to joining in, if I were convinced that it was the proper direction to take, but I am not so convinced. The Court in *State v. Pandoli*, 109 N.J.Super. 1, 262 A.2d 41, 42 (1970), concluded that a driver "had no right to have the advice of an attorney before determining whether he would accede to the test, insofar as the sanction of revocation for refusal is concerned." The Court reasoned:

"In any event, the request for consultation with counsel necessarily involved a delay in administration of the test. Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensi-

ble to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. *See Ent v. State, Department of Motor Vehicles, supra* [265 Cal.App.2d 936, 71 Cal.Rptr. 726 (Ct.App.1968)]. The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." 262 A.2d at 42.

*See also Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971); *Bapat v. Jensen*, 220 Neb. 763, 371 N.W.2d 742 (1985); *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984); *State v. DeLorenzo*, 210 N.J.Super. 100, 509 A.2d 238 (1986); *State v. Vega*, 200 N.J.Super. 448, 491 A.2d 797 (1984); *McFarren v. Com. Dept. of Transp.*, 507 A.2d 879 (Pa.Cmwlth.1986); *Dunn v. Petit*, 388 A.2d 809 (R.I.1978); *Cavaness v. Cox*, 598 P.2d 349 (Utah 1979).

I accordingly, respectfully dissent.

VANDE WALLE, Justice, dissenting.

For the purposes of this dissent I agree with the majority opinion that on the facts before us there appears to be no valid reason why Kuntz should not have been permitted to call his attorney before deciding whether or not to submit to the Intoxilyzer test. Although the matter before us is a civil proceeding the arrest was for the commission of a crime, i.e., driving while under the influence of alcohol or drugs in violation of Section 39–08–01, N.D.C.C., and therefore Section 29–05–20, N.D.C.C., appears applicable by the very terms thereof.[1] I cannot, however, agree that a violation of the statutory right[2] automatically

---

[1]. The majority opinion does not discuss the argument made by counsel for the Commissioner that Section 29–05–20 which states that "any attorney at law entitled to practice in the courts of record of this state, at *his* request, may visit *such* person after *his* arrest" gives the attorney the right to visit the person arrested, not the person arrested the right to have counsel visit him. Although I believe the statute is grammatically susceptible of such a construction, I prefer the one placed upon it by the majority opinion.

[2]. Although it is not entirely clear to me from the majority opinion, I do not understand the majority opinion to hold that the right is, at the stage of the proceedings with which we are concerned, a constitutional right. Many of the very cases upon which the majority relies discuss the *issue* of the constitutional right to counsel but specifically state they premise their right to counsel on the statute, not the Federal or State Constitution. See, e.g., *State v. Vietor*, 261 N.W.2d 828 (Iowa 1978); *Prideaux v. State Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385

leads to a conclusion that there was no refusal and thus engaging, despite the statement to the contrary, what appears to be a form of the exclusionary rule in this *civil* proceeding.

Because Section 39–20–08, N.D.C.C., provides that a refusal to submit to a test is admissible evidence in both civil and criminal proceedings,[3] the majority concludes that the civil and criminal consequences are so intermingled that they are not perceptibly different to lay persons. But this court has previously held that proceedings under Chapter 39–20, N.D.C.C., are civil in nature and separate and distinct from criminal proceedings [*State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982)], and I do not understand the majority to be enunciating a new "perceptibly different to a lay person" standard by which this court is to review this and similar matters.

Furthermore, the right to refuse to submit to the test after a valid arrest is statutory. Sec. 39–20–04, N.D.C.C. From the perspective of constitutional rights, a test could properly be administered as a search incident to arrest notwithstanding Kuntz's lack of consent or even his objection. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Mertz*, 362 N.W.2d 410 (N.D.1985); *State v. Kimball*, 361 N.W.2d 601 (N.D.1985).

The majority opinion may be read to mean that because Kuntz requested permission to talk with an attorney before determining whether or not to submit to the test, his refusal to submit to the test was not the affirmative refusal we have held is required by Section 39–20–04. *Mertz, supra; Kimball, supra.* But if that is the reading to be given the opinion, the issue of whether or not there was an affirmative refusal to submit to the test is, under at least one of the cases cited favorably in the majority opinion, a question of fact to be determined by the trier of fact.

Thus in *Siegwald v. Curry*, 40 Ohio App.2d 313, 318, 319 N.E.2d 381, 385 (1974), the Ohio Court of Appeals stated:

"It is not a refusal to take the required test for the arrested person to request the exercise of his statutory right, . . . to telephone an attorney during this reasonable time period in which he is determining whether to take the test, so long as the delay occasioned by such communication is short and reasonable. On the other hand, where questions are asked or requests made, including a request to consult an attorney, as a subterfuge to avoid taking a test, there is a refusal . . . Basically, whether or not there has been a refusal is a factual determination to be made by the trial court based upon the facts and circumstances of the case."

After noting that most courts in other jurisdictions that have considered the issue have held that a refusal to submit to a chemical test without first consulting with a lawyer constitutes a refusal to submit to the test under the implied-consent law, the court held, at page 388 of the reported case:

"Ohio statutes afford a greater right to consult with an attorney than either the Ohio or federal constitutions. We find no error in a finding by a trial court that a good-faith request of an arrested person to exercise his statutory right . . . to call an attorney, before submitting to a chemical test . . . does not constitute a refusal to take such test, where the delay occasioned by the exercise of that statutory right will not unduly or unreasonably delay the administering of the test. Whether or not the request to consult the attorney is made in good faith and whether the exercise of the right will unreasonably delay administering the test are factual issues to be determined from the facts and circumstances of each case."

---

(1976); *Siegwald v. Curry*, 40 Ohio App.2d 313, 319 N.E.2d 381 (1974).

**3.** Prior to 1983, proof of refusal to submit to the test was admissible in civil or criminal proceedings only if the person arrested first testified.

See 1983 N.D.Sess.Laws Ch. 415, Sec. 30. Presumably the term "civil proceeding" did not include a hearing on a license revocation for failure to submit to the test.

But in this instance the trier of fact, the hearing officer, found:

"Mr. Kuntz would not say if he would or would not submit to the test. He wanted to make a call or talk to his attorney first. The test procedures were started and when the time came to give a sample of his breath Mr. Kuntz did not blow into the machine."

The hearing officer concluded:

"I find Mr. Kuntz failed to submit to the chemical test offered to him as directed by Deputy Nodland and as Mr. Kuntz agreed to do when he accepted his North Dakota driver's license and that's explained in 39–20–01 [N.D.C.C.] ..."

This is, of course, an appeal from the decision of an administrative agency and we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence. See, e.g., *Christenson v. Job Service*, 399 N.W.2d 300 (N.D.1987).

It appears evident, however, that the majority is deciding as a matter of law that the refusal to allow the person arrested to consult with an attorney prior to determining whether or not to submit to the test is not a refusal to be tested. Although this may be contrary to the weight of authority, at least two cases cited in the majority opinion support that conclusion, albeit with little discussion of the rationale or logic by which those courts reached such a conclusion. Thus in *Prideaux v. State Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385, 395 (1976), after an extensive discussion of whether or not the right to counsel prior to deciding whether or not to submit to the test was constitutional or statutory (and deciding that it was statutory), after deciding that a limited right did exist, and

after deciding to confine the impact of its holding to any case then pending rather than to cases previously decided, the court simply concluded:

"In the instant case the driver asserted his right to counsel and that right was denied. Therefore, under the reasoning of this opinion, he is not bound by his refusal and his license must be restored."

So, too, in *Fuller v. State, Dept. of Transp.*, 275 N.W.2d 410, 411 (Iowa 1979), the Iowa court, extending its holding in *State v. Vietor*, 261 N.W.2d 828 (Iowa 1978), to the civil proceeding involving suspension of a license for refusal to submit to the test, indicated that the rationale of *Vietor* was that a defendant could not be required to make his election until he had consulted counsel and that if a defendant was denied this statutory right on request, he could not be held to have refused a chemical test. The court concluded by stating:

"If there was no refusal, the premise upon which the state may revoke a license ... is missing."

In *Vietor, supra*, at page 832, the Iowa court stated:

"There remains the question as to what remedy should attend a violation of § 755.17. We said in *State v. Heisdorffer*, 164 N.W.2d [173] at 176, a violation of the statute should not make the evidence thus obtained inadmissible. Both *Prideaux* and *Gursey* [*People v. Gursey*, 22 N.Y.2d 224, 292 N.Y.S.2d 416, 239 N.E.2d 351 (1968) ] espouse an exclusionary rule. We believe that conclusion is the correct one, and we now hold evidence of Irvin's refusal to submit to a chemical test is not admissible at his OMVUI trial." [4]

We have been given no particular rationale as to why the exclusionary rule should

---

**4.** It appears to me that a better argument could be made that the refusal is not an "informed refusal," i.e., the opposite of an "informed consent" used in the medical field. "Informed consent" is defined by Black's Law Dictionary as a "person's agreement to allow something to happen (such as surgery) that is based on a full disclosure of facts needed to make the decision intelligently, i.e., knowledge of risks involved, alternatives, etc." In their truncated discussion of the rationale for their conclusion, some of the courts cited in the majority opinion may attempt to announce such a rule, but I agree with the *Vietor* court that they are really espousing an exclusionary rule.

apply in these civil proceedings. I am unwilling to accept what seems to be almost an involuntary reaction that the exclusionary rule is the end-all conclusion for every instance of police misconduct. Recent generations may have come to accept that the automatic exclusion of evidence is constitutionally required in each and every instance of police misconduct because they have either forgotten or have not been taught that the rule is simply a prophylactic rule fashioned by the United States Supreme Court in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), but not applied to State and local law-enforcement officers until *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) [after this writer had received his law degree]. The rule has come under criticism in some of the opinions of this court [see *State v. Klevgaard,* 306 N.W.2d 185, 190 (N.D. 1981), and *State v. Johnson,* 301 N.W.2d 625, 629 (N.D.1981)] and in at least one article in the *North Dakota Law Review* [see Lockney, *An Open Letter to the North Dakota Attorney General Concerning Search and Seizure Law and the Exclusionary Rule,* 62 N.D.L.Rev. 17 (1986)].

But whatever may be the debate about the application of the exclusionary rule to criminal proceedings, it appears to me that we should be cautious about extending it to civil proceedings in which the right denied is of statutory, not constitutional, origin, and particularly where the extension appears to be a "knee-jerk" reaction without data, discussion, or rationale to support it.[5]

I submit there are alternatives to the exclusionary rule should police officers deny arrested persons their right to talk with counsel. For starters, Section 12.1-

11–06, N.D.C.C., makes it a Class A misdemeanor for any public servant to knowingly refuse to perform any duty imposed upon him by law, and the majority obviously holds that Section 29–05–20, N.D.C.C., not only gives a statutory right to a person arrested to visit with counsel but also creates a concomitant duty upon the custodial officer to allow such visitation. Additionally, the actions for damages against individuals who deny rights to others are not unknown in our jurisprudence.

Finally, I am concerned with the application of the result achieved by the majority opinion. Although the majority attempts to distinguish *Agnew v. Hjelle,* 216 N.W.2d 291 (N.D.1974), the *Agnew* court stated, at page 298:

> "Before we conclude our opinion, we think it proper to comment on the civil nature of an Implied Consent Statute as it relates to revocation of drivers' licenses for failure to take a chemical test to determine alcoholic content of blood. As we said in *Borman* [*Borman v. Tschida,* 171 N.W.2d 757 (N.D.1969)], proceedings under the Implied Consent Law are civil in nature. Courts which have considered the question generally hold that refusing to submit to a chemical test until counsel is consulted is an unreasonable refusal, there being no right to counsel in a civil proceeding. [Citations omitted.]"[6]

Although the right to counsel pursuant to Section 29–05–20, N.D.C.C., may not have been considered in *Agnew,* it nevertheless appears that prior to this time a police officer would justifiably conclude that there existed no right of an arrested person to contact counsel before deciding

---

5. Compare the rationale in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), in which the Court discussed at length its reasons for extending the exclusionary rule to the States with the dearth of data or rationale in the cases upon which the majority opinion relies and in the majority opinion itself. Lest it be argued that the same rationale and reasoning used in *Mapp* extends to this case involving a statutory right in a civil proceeding, I am unwilling to accept that logic.

6. The trial court in affirming the decision of the Commissioner indicated it was clear from *State*

*v. Fields,* 294 N.W.2d 404 (N.D.1980), that the officers were not required to allow Kuntz to call counsel. I agree with the majority opinion that Section 29–20–05, N.D.C.C., was not raised in that case. Furthermore, the discussion in *Fields* centered on the "confusion" which might be created by the giving of the *Miranda* advisory and the arrested person's right to remain silent *vis-a-vis* the consequences of his failure to submit to the test. See also *Hammeren v. North Dakota State Highway Com'r,* 315 N.W.2d 679 (N.D.1982).

whether or not to submit to the test.[7] Thus, as a practical matter, the majority opinion reverses *Agnew.* It was in just such a situation that the courts upon which the majority relies gave only some prospective application to their decisions. See *Prideaux, supra,* 247 N.W.2d at 398 (on Petition for Rehearing), and *Vietor, supra.*

For the reasons stated herein I would affirm the judgment of the district court affirming the decision of the State Highway Commissioner.

---

7. It may be that it is more appropriate to apply an exclusionary rule in the first instance in which a change in the law is announced, such as here, because the officer may have as a ready defense to any criminal action or civil action for damages the fact that he relied on prior precedent. I do not, however, read the majority opinion as being limited only to this case.