2016 ND 64

**Craig Thomas CUDMORE, Appellant,**

**v.**

**DIRECTOR OF the NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

**No. 20150282.**

Supreme Court of North Dakota.

March 15, 2016.

Jennifer A. Braun, Fargo, ND, for appellant.

Michael T. Pitcher, Assistant Attorney General, Office of the Attorney General, Bismarck, ND, for appellee.

McEVERS, Justice.

[¶ 1] Craig Cudmore appeals from the district court's judgment affirming the North Dakota Department of Transportation's ("DOT") revocation of his driving privileges. Cudmore argues the hearing officer erred in finding that he did not invoke his right to consult with counsel before submitting to a chemical test. We affirm.

I

[¶ 2] In March 2015, Cudmore was arrested for driving under the influence of alcohol ("DUI") after his responses to the deputy's requests to submit to a chemical blood test were deemed a refusal. Cudmore timely requested an administrative hearing. According to testimony at the administrative hearing, Walsh County Deputy Sheriff Matthew Wark stopped Cudmore for a traffic violation. The deputy smelled a strong odor of alcohol coming from the vehicle. The deputy ordered Cudmore out of the vehicle and requested Cudmore to submit to field sobriety testing. Cudmore failed the horizontal gaze nystagmus test, failed a partial alphabet test, and failed a reverse count test. The deputy read the implied consent advisory to Cudmore and asked him to submit to a preliminary chemical breath test. Cudmore consented to a preliminary breath test, which produced a result indicating

Cudmore was over the legal limit. The deputy arrested Cudmore, handcuffed him, and placed him in the back of the patrol vehicle.

[¶ 3] According to the deputy's testimony, a few minutes passed as the deputy spoke to the passengers in Cudmore's vehicle before re-engaging Cudmore in conversation. Cudmore inquired about the amount of bond and informed the deputy he was arrested for DUI approximately eight years prior. Cudmore also informed the deputy he owned a trucking company and "it was a serious problem for him and me at this time." The deputy further testified:

Mr. Cudmore started getting agitated and said ... he was going to fucking lawyer up.... [H]e was starting to get very agitated in the backseat. I stated to Mr. Cudmore that I was going to read the DUI implied consent form again to him. At this time Mr. Cudmore told me to ... or stated to me, "Fuck you." ... I started to read the DUI implied consent form and during ... while I was reading the implied consent form, Mr. Cudmore was screaming in the backseat, "Fuck you. You're a piece of shit. Fuck you, motherfucker. You're a piece of shit[ ]", the entire time while I read the DUI implied consent.... I stated to Mr. Cudmore if he was willing to take the blood test at this time, what I was asking for.... Mr. Cudmore screamed through the back, what the fuck do I need to take a blood test for? I then tried to explain to Mr. Cudmore that there are two parts to the DUI implied consent form and Mr. Cudmore started screaming "Fuck you" and "Fuck you." ... At that time Mr. Cudmore threw himself, leading with his head into my Plexiglas cage with his head. Which I immediately observed blood coming from his head at this time.... At that

point I considered his actions as a refusal.

The deputy testified he interpreted Cudmore's statement to mean "he's going to get a lawyer after everything."

[¶ 4] Cudmore required medical treatment for his injuries, and was taken to the hospital, where he continued to scream profanities at the deputy. After receiving treatment, Cudmore was taken to the jail where the deputy attempted to explain the citations and the Report and Notice Form to Cudmore. According to the deputy's testimony, "Mr. Cudmore basically stated, fuck you I'm not signing anything and didn't want to listen or anything."

[¶ 5] The administrative hearing officer found reasonable and articulable suspicion for the traffic stop and the deputy had reasonable grounds to believe Cudmore was driving under the influence of alcohol. The hearing officer further found Cudmore's statement, "I'm going to fucking lawyer up," was not a request to speak with an attorney in response to the deputy's request for Cudmore to submit to a blood test. The hearing officer also found the deputy reasonably understood Cudmore's statement to mean he was going to fight the DUI charge and not a request to immediately consult with an attorney. The hearing officer concluded Cudmore's reference to "lawyering up" volunteered before he was asked to submit to a blood sample was a passing reference to an attorney. The hearing officer revoked Cudmore's driving privileges for 180 days. Cudmore timely appealed the administrative hearing officer's decision to the district court. The district court affirmed the administrative hearing officer's decision. Cudmore timely appealed the district court's judgment affirming the administrative hearing officer's decision.

## II

[¶ 6] Cudmore argues the hearing officer erred in finding Cudmore did not make a lawful request to speak to an attorney. "This Court reviews the administrative revocation and suspension of driving privileges under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32." *Kasowski v. N.D. Dept. of Transp.,* 2011 ND 92, ¶ 5, 797 N.W.2d 40. We must affirm the administrative hearing officer's decision, unless:

1. The order is not in accordance with the law. 2. The order is in violation of the constitutional rights of the appellant. 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. We exercise limited review of an administrative agency's decision:

"We do not make independent findings of fact or substitute our judgment for that of the agency when reviewing an administrative agency's factual findings. We determine only whether a reasoning mind reasonably could have determined the factual conclusions reached were proved, by the weight of the evidence from the entire record. If the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision. [W]e . . . review questions of law de novo."

*Kasowski,* 2011 ND 92, ¶ 5, 797 N.W.2d 40 (quoting *Lange v. Dept. of Transp.,* 2010 ND 201, ¶ 5, 790 N.W.2d 28).

[¶ 7] In *Washburn v. Levi,* we articulated our standard for determining whether there is a violation of the limited statutory right to speak with an attorney:

Before deciding whether to submit to chemical testing, an individual has a qualified statutory right to consult with an attorney. N.D.C.C. § 29–05–20. "[I]f an arrested person asks to consult with an attorney before deciding to take a chemical test, he must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test." *Kuntz v. State Highway Comm'r,* 405 N.W.2d 285, 290 (N.D.1987). A failure to provide a reasonable opportunity to consult with counsel after the arrestee requests as much disallows the Department from revoking the arrestee's driver's license under N.D.C.C. ch. 39–20 based upon the arrestee's refusal to submit to chemical testing. *Id.*

In determining whether an arrestee requested an attorney for purposes of determining whether to consent to chemical testing, we have done away with case-by-case determinations that are often a matter of subjectiveness. In *Baillie v. Moore,* we articulated a self-described bright-line standard against

which a purported request for an attorney should be judged:

> [W]e hold that if a DUI arrestee, *upon being asked to submit to a chemical test,* responds with any mention of a need for an attorney—to see one, to talk to one, to have one, etc.—the failure to allow the arrestee a reasonable opportunity to contact an attorney prevents the revocation of his license for refusal to take the test. A refusal to take the test under these conditions is not the affirmative refusal necessary to revoke a license under § 39–20–04, N.D.C.C.

522 N.W.2d 748, 750 (N.D.1994). Under this standard, if "the arrestee responds with any affirmative mention of a need for an attorney, law enforcement personnel must assume the arrestee is requesting an opportunity to consult with an attorney and must allow a reasonable opportunity to do so." *Id.* 2015 ND 299, ¶¶ 8–9, 872 N.W.2d 605 (emphasis added). In *State v. Lee,* we articulated our rationale for adopting an objective test:

> Our purpose in adopting a bright-line rule was to avoid the need to engage in case-by-case consideration of the surrounding circumstances, such as the timing of the request, the alleged "casual" nature of the conversation or whether specific "magical words" were used. To that end, our directive in *Baillie* is clear: If a DUI arrestee *who has been asked to take a chemical test* makes any mention of a need for an attorney, the officer must assume the arrestee is requesting an opportunity to consult with an attorney and must allow a reasonable opportunity to do so. *However, the directive in Baillie is not without limits,* and those limits are apparent from the *Baillie* holding itself.

2012 ND 97, ¶ 9, 816 N.W.2d 782 (citations omitted) (quotation marks omitted) (emphasis added). If the arrestee makes only a passing reference to an attorney rather than mentioning a need for an attorney, an arrestee is not denied his limited statutory right to counsel prior to chemical testing. *Id.* at ¶¶ 9–10. In *Lee,* we concluded:

> Lee agreed to take the [preliminary] test. The district court found Lee did not ask to speak with counsel either when he agreed to the test or afterward. Rather, during a subsequent conversation with the officer, Lee made only passing reference to having "Cash give me a good try." While this entire proceeding might have been unnecessary had the arresting officer simply asked Lee to clarify whether he wanted to speak with an attorney then, under the facts of this case we agree with the district court that Lee's statements were not requests to consult with counsel before taking the chemical test. Therefore, Lee was not denied his limited statutory right to counsel prior to chemical testing and suppression of the test results is not required.

*Id.* at ¶ 10.

█ [¶ 8] The parties do not dispute Cudmore made a reference to "lawyering up." However, Cudmore argues his comments qualified as an affirmative mention of an attorney under *Baillie* while the Department argues Cudmore's statements were not made in response to a request for him to submit to a chemical test. Further, the Department argues Cudmore's request was ambiguous and amounted to a mere passing reference to an attorney in connection with fighting his DUI charge in the future.

[¶ 9] Here, according to testimony, the deputy requested Cudmore submit to a preliminary breath test, and Cudmore consented to the test. After the deputy ar-

rested Cudmore for DUI, several minutes passed while the deputy spoke with passengers in Cudmore's vehicle. The deputy returned to his patrol vehicle and engaged Cudmore in conversation. Cudmore inquired about bond in connection with the charge and informed the deputy he was going to "lawyer up." The deputy read the implied consent warning again and asked Cudmore to submit to a blood test. Cudmore responded, not by requesting to speak with an attorney, but with multiple vulgarities and physical violence. The hearing officer found, as a matter of fact:

> During Deputy Wark's contact with him, Mr. Cudmore did not request to speak to an attorney. Deputy Wark did not interpret Mr. Cudmore's post-arrest, pre-request statement, "I'm going to fucking lawyer up" as a request to immediately speak to an attorney and his interpretation was reasonable under the circumstances. Deputy Wark testified that he interpreted the statement simply to mean that Mr. Cudmore was going to hire a lawyer, and therefore, did not offer Mr. Cudmore a phone and directory at the jail. Deputy Wark's testimony was credible and was not impeached. A reasonable person would interpret the statement as a challenge to occur in the future, even a threat, and not a request to immediately consult with an attorney. After Deputy Wark explained that the blood test served a different purpose than the on-site breath test, Mr. Cudmore showed no hesitation in providing his profane verbal and violent physical response to the request for a blood draw.

[¶ 10] "Under our standard of review, we will affirm an agency's finding of fact unless such finding is not supported by a preponderance of the evidence. N.D.C.C. § 28–32–46(5)." *Washburn,* 2015 ND 299, ¶ 11, 872 N.W.2d 605. In determining if a preponderance of the evidence supports a finding, " 'we do not reweigh the evidence or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.' " *Id.* (quoting *Leno v. N.D. Dept. of Transp.,* 2008 ND 10, ¶ 9, 743 N.W.2d 794.) Cudmore did not appear at the administrative hearing and provided no evidence to controvert the deputy's testimony. In this case, the reference to "lawyer up" mixed in with a barrage of profanity launched at the deputy is beyond the bright line in *Baillie,* either as a matter of fact under the circumstances of this case, or as a matter of public policy. However, the reference to an attorney made by a person in a less bombastic and profane conversation might well invoke the bright line of *Baillie.* Therefore, we conclude a preponderance of the evidence supports the hearing officer's factual finding that Cudmore did not request to speak with an attorney. While an officer should seek to clarify an ambiguous request to speak with an attorney, in light of the evidence presented at the administrative hearing and given our deferential standard of review of an administrative hearing officer's findings of fact, we conclude reasoning minds could interpret Cudmore's actions as a refusal under these circumstances.

[¶ 11] We conclude the hearing officer's conclusions of law are sustained by the findings of fact, and the decision revoking Cudmore's driving privileges is supported by the conclusions of law.

### III

[¶ 12] We affirm the district court's judgment affirming the DOT's revocation of Cudmore's driving privileges.

[¶ 13]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.