The STATE of North Dakota,
Plaintiff and Appellant,

v.

Julie Ann FASCHING, Defendant
and Appellee.

Crim. No. 890196.

Supreme Court of North Dakota.

March 27, 1990.

Allen M. Koppy (argued), States Atty., Mandan, for plaintiff and appellant.

Vinje Law Firm, Bismarck, for defendant and appellee; argued by Ralph A. Vinje.

MESCHKE, Justice.

We consider whether custodial interrogation without a *Miranda* warning requires suppression of all evidence, testimonial and non-testimonial. We hold that only testimonial evidence must be suppressed. Therefore, we reverse the trial court's suppression of all evidence gathered after the custodial interrogation began.

At 12:26 A.M. on January 1, 1989, Morton County Deputy Sheriff Duane Snider observed a car accelerate rapidly onto Interstate 94 and, while following it, saw it "wander" in its lane several times. He stopped the car driven by Julie Fasching.

Deputy Snider approached the driver, asked for her driver's license, and identified Fasching. Suspecting that she was

under the influence of alcohol, Snider asked Fasching to step out of her vehicle and to have a seat in his patrol car. While Fasching was doing so, Snider observed her side-step once to maintain her balance. Fasching's passenger, Debra Holter, identified herself as Fasching's attorney and attempted to accompany Fasching to the patrol car. Snider ordered Holter to wait in Fasching's car.

After Fasching was seated in the patrol car, Holter again got out of Fasching's car and approached the patrol car. After writing the patrol car's license number, Holter tapped on the passenger window to get the occupants' attention. Holter told the deputy that she was Fasching's attorney and wanted to advise her client. Snider instructed Holter to get back into Fasching's car, which Holter did. During this approach by Holter, Snider locked the doors of his patrol car.

In the patrol car, Deputy Snider questioned Fasching and administered sobriety tests. Snider asked Fasching about where she had been and about the amount of alcohol she had consumed. Fasching performed an alphabet recital, a numerical countdown, and a lateral nystagmus test. During the questions and tests, Fasching asked to consult with Holter, but Snider denied her request. After completion of the sobriety tests, Snider arrested Fasching for driving under the influence and then gave her the customary *Miranda* advisory of rights. Fasching and Holter were taken in separate patrol cars to the law enforcement center where Fasching was given an intoxilyzer test before seeing Holter.

Before trial, Fasching moved to dismiss the charge or, "in the alternative, suppress [the] evidence gained as the result of an illegal arrest and subsequent illegal questioning." After an evidentiary hearing, the trial court found that "at the time [Fasching] was taken back to the patrol car by Deputy Snider she was in custody and deprived of her freedom in a significant way.... [A] reasonable person in [Fasching's] position, who just had her attorney ordered back into the car by a Deputy, would have understood that she was in custody and deprived of her freedom in a significant way." Concluding that "a custodial situation existed when Deputy Snider placed [her] in the patrol car," the trial court ruled that Fasching "should have been advised of her rights under *Miranda* prior to any questioning." The trial court ordered suppression of "all the evidence gained by Deputy Snider after [Fasching] was placed in the patrol car."

The State appealed, arguing that the trial court erroneously suppressed "nontestimonial," physical evidence, including the deputy's observations of Fasching's physical condition after she entered the patrol car (the look of her eyes, the odor of her breath, her gait, and her speech pattern), her performance on the physical sobriety tests, and the result of her intoxilyzer test. In response, Fasching argued that she had been "arrested" when she was placed in the squad car because she had been denied access to her accompanying attorney, locked in the patrol car, and kept there with the windows rolled up. Fasching extended this argument by insisting that she was arrested without probable cause and that, since the arrest was illegal, *"all evidence* derived from the illegal arrest should be (and was) suppressed." (Fasching's emphasis). Recognizing that this argument went beyond the trial court's finding of custodial interrogation without a *Miranda* warning, Fasching argued that "in relying on *Miranda,* [the trial court] simply did not express *all the reasons* that all evidence was suppressed." (Fasching's emphasis). In addition, Fasching argued that she was denied her right to counsel which also required suppression of all evidence.

The Fifth Amendment to the United States Constitution proclaims: "No person ... shall be compelled, in any criminal case, to be a witness against himself...." In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court implemented this privilege against compelled self-incrimination:

[T]he prosecution may not use statements, whether exculpatory or inculpato-

ry, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. (footnote omitted).

384 U.S. at 444, 86 S.Ct. at 1612. If the police take someone into custody and question that person without warning about this basic constitutional right, the responses cannot be used as evidence to establish guilt.

■ Concurrent with its *Miranda* decision, the United States Supreme Court ruled in *Schmerber v. California*, 384 U.S. 757, 764–65, 86 S.Ct. 1826, 1832–33, 16 L.Ed.2d 908 (1966), that the Fifth Amendment privilege against self-incrimination did not protect an accused from compulsion as the source of "real or physical evidence," such as blood tests, fingerprints, photographs, measurements, and identification through writing, speaking, or physical activity. "Since the blood test evidence, although an incriminating product of compulsion, was neither [the accused's] testimony nor evidence relating to some communicative act or writing by the [accused], it was not inadmissible on privilege grounds." 384 U.S. at 765, 86 S.Ct. at 1833. Non-testimonial, "physical" evidence can be obtained and used without regard to the Fifth Amendment privilege against self-incrimination.

■ Both the procedural safeguard of the *Miranda* warning and the "physical" evidence exception apply to traffic stops for intoxicated driving. In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court held that a person subjected to custodial interrogation was entitled to the *Miranda* procedural safeguard regardless of the nature or severity of the offense suspected. Since McCarty was not informed of his constitutional rights when he was formally arrested for driving while intoxicated and when he was instructed to get into the police car, McCarty's statements made later at the police station were inadmissible. McCarty was then "in custody." However, a person temporarily detained for an "ordinary traffic stop" is not "in custody" for the purposes of *Miranda*. Therefore, McCarty's questioning by an officer at the roadside, outside of his car, during the temporary traffic stop was not "custodial interrogation," so that his statements before his arrest were admissible as evidence.

Recently, in *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988), the United States Supreme Court reiterated that the " 'noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of *Miranda*.' " The *Bruder* opinion summarized the holding in *Berkemer v. McCarty*:

The Court reasoned that although the stop was unquestionably a seizure within the meaning of the Fourth Amendment, such traffic stops typically are brief, unlike a prolonged station house interrogation. Second, the Court emphasized that traffic stops commonly occur in the "public view," in an atmosphere far "less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." ... The detained motorist's "freedom of action [was not] curtailed to 'a degree associated with formal arrest.' " ... Accordingly, he was not entitled to a recitation of his constitutional rights prior to arrest, and his roadside

responses to questioning were admissible. (footnote omitted). 488 U.S. at 11–12, 109 S.Ct. at 206–07. The Court reversed a state court judgment that suppressed evidence gathered from questioning during a roadside stop for a traffic offense. In doing so, a footnote in the *Bruder* opinion explained that *Berkemer* had not announced "an absolute rule for all motorist detentions" and had declared "that lower courts must be vigilant that police do not 'delay formally arresting detained motorists, and ... subject them to sustained and intimidating interrogation at the scene of their initial detention.'" 109 S.Ct. at 207, n. 1.

■ Custodial interrogation can take place in the field as well as at the police station. *See Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Duckworth v. Eagan*, —— U.S. ——, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989); *State v. Fields*, 294 N.W.2d 404, 409–10 (N.D.1980). Wherever it occurs, a suspect has the right to an attorney before and during "sustained and intimidating" custodial questioning like that which the trial court found took place here in the deputy's patrol car. *See State v. Connery*, 441 N.W.2d 651, 653–55 (N.D.1989), where this court distinguished between statements made during "custodial interrogation" at a traffic stop and a second statement made by the defendant after he had been told that he was free to leave. *Compare Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *State v. Skjonsby*, 319 N.W.2d 764 (N.D. 1982); *State v. Berger*, 329 N.W.2d 374, 376 (N.D.1983); *State v. Mertz*, 362 N.W.2d 410 (N.D.1985); and *State v. Pitman*, 427 N.W.2d 337 (N.D.1988), where "general on-the-scene" investigatory questioning has been distinguished from "custodial interrogation." The State, in its appeal here, did not contest the trial court's finding that the questioning of Fasching in the patrol car was custodial interrogation, not a mere roadside investigation.

Rather, this appeal focused on the consequences of failing to give Fasching the *Miranda* warning before that custodial questioning. The State argued that not "all the evidence gained" should have been suppressed but, correctly, only "testimonial" evidence gathered after Fasching was locked in the patrol car should have been suppressed. We agree. Not all aspects of this roadside stop and ensuing custodial questioning were communicative.

■ *Schmerber* applies here. "The distinction ... is that the privilege [against compelled testimony] is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber v. California*, 384 U.S. at 764, 86 S.Ct. at 1832. *See also South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). While Fasching's answers about what she had drunk and where she had been were properly suppressed, gathering of evidence other than communications did not transgress the constitutional bar against compelling testimony. "Field sobriety tests are based on the relationship between intoxication and the loss of coordination which intoxication causes. These tests do not force the subject to betray his subjective knowledge through his communicative facilities. They only compel the suspect to exhibit his physical characteristics of coordination as a source of real or physical evidence which may be testified to by the officer observing the tests." *City of Wahpeton v. Skoog*, 300 N.W.2d 243, 245 (N.D.1980). The deputy's observations of Fasching's physical condition and her performance during physical tests, as well as her blood test result, should not have been suppressed.

■ Fasching also argued that she was illegally arrested without probable cause. The trial court did not conclude that Fasching was stopped without an articulable and reasonable suspicion, nor did the trial court conclude that the deputy lacked probable cause to arrest her without use of her answers to his questions. *See State v. VandeHoven*, 388 N.W.2d 857 (N.D.1986); *Neset v. North Dakota State Highway Commissioner*, 388 N.W.2d 860 (N.D. 1986). Therefore, we do not address

Fasching's extended argument that her arrest was illegal and thus required suppression of all evidence thereby gained. Absent a conclusion by the trial court that Fasching was stopped without reasonable suspicion or that she was arrested without probable cause, we cannot hold that her arrest was entirely illegal so as to require suppression of the evidence about her physical condition. *City of Langdon v. Delvo*, 390 N.W.2d 51 (N.D.1986). Of course, Fasching is free to pursue this argument in the trial court on remand.

Nor do we reach Fasching's argument that she was denied her statutory and constitutional rights to counsel. *See Fasching v. Backes*, 452 N.W.2d 324 (N.D.1990). The trial court reached no conclusions on this subject, either.

We reverse and remand for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.