2000 ND 184

CITY OF MANDAN, Plaintiff and Appellant,

v.

Brian Quentin LENO, Defendant and Appellee.

No. 20000104.

Supreme Court of North Dakota.

Oct. 26, 2000.

---

**162**

Allen M. Koppy, City Prosecutor, Mandan, for plaintiff and appellant. Submitted on brief.

Rodney K. Feldner, Mandan, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] The City of Mandan appealed from an order suppressing evidence in connection with a charge of driving while under the influence of intoxicating liquor. The trial court expanded the limited statutory right to a reasonable opportunity to consult with an attorney by holding the right existed prior to arrest. We reverse and hold the limited statutory right for a reasonable opportunity to consult with an attorney attaches only after arrest. We remand for a factual finding of whether or not Brian Quentin Leno invoked his right to consult with his attorney after arrest, prior to consenting to the ultimate evidentiary chemical test.

[¶ 2] On the evening of October 9, 1999, Officer Lonnie Grabowska of the Mandan Police Department was patrolling the downtown district of Mandan. At about 9:30 p.m. the officer observed a small white truck pull out of a parking lot in downtown Mandan. The truck made a wide turn, accelerated quickly, swerved, and crossed over onto the oncoming lane of traffic. The officer paced the truck's speed at 45 miles per hour in a 25 mile per hour zone. At this point, the officer stopped the vehicle.

[¶ 3] The officer approached the vehicle and asked the driver, Brian Quentin Leno, for his license. Leno's eyes were red and glossy in appearance and the officer detected a strong odor of alcoholic beverage. The officer recognized the passenger as an attorney with whom he had previously been in contact in DUI cases. The officer asked Leno if they had been drinking and Leno stated they had been drinking and they were just coming from the bar.

[¶ 4] The officer asked Leno if he would submit to some testing to verify his ability to operate his motor vehicle. Leno consented. The officer conducted four field sobriety tests outside the vehicles, between the truck and the patrol car. The officer then read Leno the implied consent advisory and asked if he would consent to an on-site pre-breathalyzer screening test. At this point, Leno asked if he could speak to his attorney, who remained seated in the truck. The officer explained that since Leno was not under arrest, he did not have a right to counsel prior to the on-site screening test. Leno consented to the on-site screening test which was also performed outside, between the two vehicles. Leno failed the test and the officer placed him under arrest for driving under the influence of alcohol.

[¶ 5] Leno was placed in the squad car, informed of the implied consent advisory for a blood test, and asked if he would submit to a blood test at the Law Enforcement Center. The officer testified Leno did not again ask to speak to his attorney at this point. Leno claims he did ask to speak with his attorney at this point. The district court noted this dispute but did not make a factual finding of whether or not Leno repeated his request to speak with his attorney after arrest. Leno was transported to the Law Enforcement Center where a blood test was administered. Following the administration of the blood test,

Leno was allowed to consult with his attorney who had also been transported to the Law Enforcement Center. Leno was charged with the class B misdemeanor offense of driving while under the influence of intoxicating liquor in violation of Section 20–19–01 of the Mandan Municipal Ordinances. Leno moved to suppress the blood test evidence. The district court granted the motion.

 [¶ 6] Questions of law are fully reviewable on appeal. *Thompson v. Associated Potato Growers, Inc.*, 2000 ND 95, ¶ 7, 610 N.W.2d 53. Concerning our review of findings of fact, however, "[w]e affirm a trial court's decision on a motion to suppress unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence." *State v. Kenner*, 1997 ND 1, ¶ 7, 559 N.W.2d 538 (quoting *State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995)). This standard of review accords great deference to the trial court's decision and recognizes the importance of the opportunity to assess the credibility of the witness. *Id.*

 [¶ 7] On appeal the City of Mandan asserts Leno did not have a right to counsel prior to arrest while merely being detained at a traffic stop. Leno's only undisputed request to consult with counsel was prior to arrest. Since the trial court declined to make a factual finding of whether or not this request was repeated after arrest, we address only the issue of whether or not Leno had a right to counsel prior to arrest. Because this is a question of law, it is fully reviewable on appeal as noted above.

[¶ 8] The majority of this Court, in *Kuntz v. State Highway Commissioner*, 405 N.W.2d 285, 290 (N.D.1987), held a person arrested for driving under the influence of intoxicating liquor has a qualified statutory right to consult with an at-torney before deciding whether to submit to a chemical test:

> We hold that if an arrested person asks to consult with an attorney before deciding to take a chemical test, he must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test. If he is not given a reasonable opportunity to do so under the circumstances, his failure to take the test is not a refusal upon which to revoke his license under Chapter 39–20, N.D.C.C.

 [¶ 9] As this Court stated in *Kuntz*, this right of an arrested person to have a reasonable opportunity to consult with an attorney before taking a chemical test is a statutory right based on N.D.C.C. § 29–05–20. 405 N.W.2d at 287. In subsequent cases this Court clarified that this limited right to consult with an attorney is derived solely from the statute, and not the state or federal constitutions. *State v. Sadek*, 552 N.W.2d 71, 73 (N.D.1996)("The right to consult with an attorney before taking a chemical test is not derived from the state or federal constitutions, but from section 29–05–20, N.D.C.C."); *Mayo v. Moore*, 527 N.W.2d 257, 261 (N.D.1995)("This court has not held that an accused, arrested for driving under the influence, has a constitutional right to consult with counsel before deciding whether to submit to chemical testing."); *City of Mandan v. Jewett* 517 N.W.2d 640, 641 (N.D.1994) ("This Court has never held that an accused, arrested for driving under the influence, has a *constitutional* right to counsel before deciding whether to submit to alcohol testing."). (Emphasis in original). This Court has also clearly stated that this statutory right of an arrested person to consult with an attorney before taking a chemical test is a "limited" right and must be balanced against "the need for an accurate and timely chemical test." *Bickler v. North Dakota State Highway Comm'r*, 423 N.W.2d 146, 147 (N.D.1988).

[¶ 10] Section 29–05–20, N.D.C.C., explicitly defines this right as a right that attaches only after arrest.

Delay *after arrest* prohibited—Attorney. The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at his request, may visit such person *after his arrest.* (Emphasis added).

The term "arrest" is also defined in N.D.C.C. § 29–06–01. "Arrest defined. An arrest is the taking of a person into custody in the manner authorized by law to answer for the commission of an offense." Leno was not under arrest at the time of his undisputed request to consult with his attorney.

[¶ 11] In this case, the district court expanded this limited statutory right to consult with an attorney, reasoning there was no distinction between pre-arrest and post-arrest. But, this right exists for a person once arrested for DUI prior to submitting to a post-arrest chemical test. The district court's ruling transforms it into a right to counsel that attaches prior to arrest before submitting to an on-site screening test. This transformation is explained by the district court by analogy to *Kuntz,* an analogy that is flawed due to critical differences between *Kuntz* and this case. Leno was not under arrest at the time of the undisputed request to consult an attorney and the chemical test was not an ultimate evidentiary test, but rather, only an on-site screening test not admissible as evidence. N.D.C.C. § 39–20–14. *See also City of Fargo v. Ruether,* 490 N.W.2d 481, 483 (N.D.1992) Because *Kuntz* was premised on the statutory right to counsel after arrest prior to submitting to the ultimate evidentiary test, the differences between this case and *Kuntz* are more than mere factual distinctions. Rather, the differences go to the heart of the rationale for finding a limited statutory right initially. Here, these differences destroy the basis for extending the limited

statutory right to counsel to attach prior to arrest.

[¶ 12] The first part of the rationale for establishing this limited statutory right for a person arrested for DUI to consult with an attorney prior to the chemical test was to alleviate the "strange circumstances" of the confusion specific to the implied consent situation. *Kuntz* at 287(quoting *State v. Vietor,* 261 N.W.2d 828, 831 (Iowa 1978)). The "strange circumstances" occur when an officer arrests a person for DUI, and then reads the *Miranda* warning which includes words of assurance of a right to counsel. *Id.* at 288. Immediately after the *Miranda* warning, the officer reads the implied consent advisory which requires consent or refusal without the opportunity to consult with an attorney. *Id.* We recognized our use of this rationale for finding a limited statutory right to counsel for a person arrested for DUI in *Bickler v. North Dakota State Highway Commissioner,* 423 N.W.2d 146, 147 (N.D. 1988) by stating "[w]e believe that our holding in *Kuntz* eliminated the contradiction between the post-arrest *Miranda* assurance of a right to counsel, and the subsequent denial of access to an attorney's advice on whether to take the chemical test." This contradiction is unique to the post-arrest situation and did not arise in this case.

[¶ 13] A second crucial difference between the facts in this case and *Kuntz* is the nature of the chemical test. In *Kuntz,* the driver was arrested and immediately faced a decision of whether or not to consent to the ultimate evidentiary chemical test, the intoxilyzer test. 405 N.W.2d at 286–87. The results of this chemical test are admissible as evidence. N.D.C.C. § 39–20–07. In sharp contrast, Leno asserts the right to counsel before submitting to the on-site screening test, a test conducted prior to arrest, the results of which are not admissible as evidence for the ultimate determination of the violation. N.D.C.C. § 39–20–14. *See also City of Fargo v. Ruether* 490 N.W.2d 481, 483

(N.D.1992) (stating the only permissible evidentiary use of the screening test is to aid in determining probable cause for an arrest).

[¶ 14] It was pivotal to the majority's analysis in *Kuntz* that the results of this test could later could be used to convict Kuntz of a crime. The majority referred to the chemical test as "vital evidence" in a later criminal trial. *Kuntz*, 405 N.W.2d at 288, (quoting *State v. Vietor*, 261 N.W.2d at 831). The purpose of the screening test in this case is not to provide admissible "vital evidence" but rather its sole purpose is to ensure sufficient probable cause exists to warrant an arrest. *State v. Woytassek*, 491 N.W.2d 709, 712 (N.D.1992). The statutory right to counsel exists after arrest prior to submitting to the ultimate evidentiary chemical test. The nature of this screening test does not provide a rationale for extending the current limited statutory right to counsel prior to arrest.

[¶ 15] The district court determined there is a need for due process protections prior to the on-site screening test since refusal of this test can deprive the driver of his license. However, refusal of the screening test can be cured by consenting to take the chemical test after arrest. N.D.C.C. § 39–20–14. Section 39–20–14 states "the director must not revoke a person's driving privileges for refusing to submit to a screening test requested under this section if the person provides a sufficient breath, blood, or urine sample for a chemical test requested under section 39–20–01 for the same incident." The majority in *Kuntz* also relied on the fundamental due process right because of the consequences of refusing the chemical test, in light of the implied consent law. *Kuntz*, 405 N.W.2d at 288. However, in *Kuntz*, the ultimate evidentiary test was admissible and refusal resulted in an administrative revocation of the license. *Id.* Although Leno also faced a possibility of his license being revoked if he refused the on-site screening test, his refusal of the initial on-site screening test was cured by his subsequent consent to the blood test. N.D.C.C. § 39–20–14. Under *Kuntz* he was entitled to a reasonable opportunity to consult with an attorney before taking the blood test. Since refusal of the on-site screening test does not result in an incurable revocation of Leno's license, expanding the current post-arrest statutory right to counsel is not necessary to guarantee protections of due process.

[¶ 16] The district court also appeared to rely on *State v. Fasching*, 453 N.W.2d 761 (N.D.1990), to find a right to consult an attorney exists before arrest when the attorney is a passenger in the car and to decide the remedy for violation of this right is exclusion of the blood test. However, this reliance is misplaced because we did not reach the question of whether or not a right to counsel existed in *Fasching* but disposed of that case on the basis of a failure to give the *Miranda* warning prior to custodial interrogation. *Fasching*, 453 N.W.2d at 761, 765.

[¶ 17] Some of the facts in *Fasching* are similar to this case. Fasching, like Leno, was driving erratically which prompted a police officer to stop her car. *Fasching*, 453 N.W.2d at 761. The officer approached Fasching's car, asked for her driver's license, and suspected that Fasching was under the influence of alcohol. *Id.* at 761–62. At this time, Fasching, like Leno, was accompanied by her attorney who was a passenger in the vehicle. *Id.* at 762. This is where the similarity ends. In *Fasching*, the officer then asked Fasching to get out of her car and sit in the patrol car. *Id.* When Fasching's attorney tried to follow her to the patrol car the officer ordered her to wait in Fasching's car, which she did. *Id.* Soon after, Fasching's attorney approached the patrol car. She informed the officer she was Fasching's attorney and wished to advise her, at which time the officer told the attorney to get back in Fasching's car and locked the doors of the patrol car. *Id.* The officer then continued questioning Fasching. *Id.* The trial court found that upon being

locked in a patrol car, after hearing the officer order her attorney to get back into her car, Fasching would have understood she was in custody and deprived of her freedom in a significant way. *Id.* In contrast, Leno remained outside in public view consistent with an ordinary traffic stop. As we stated in *Fasching*, "a person temporarily detained for an 'ordinary traffic stop' is not 'in custody' for the purposes of *Miranda*." *Fasching*, 453 N.W.2d at 763.

[¶ 18] The issue in *Fasching* was whether custodial interrogation without a *Miranda* warning requires suppression of all evidence, testimonial and non-testimonial. *Fasching*, 453 N.W.2d at 761. We held only testimonial evidence must be suppressed, and therefore did not suppress the blood test results. *Id.* We did not reach Fasching's argument she was denied her statutory and constitutional rights to counsel. *Id.* at 765. Despite the fact that both *Fasching* and this case present the uncommon situation of a driver being stopped for a traffic violation in the physical presence of the driver's attorney, the dispositive issue in *Fasching* is unrelated to this case. Leno's brief detention was not custodial interrogation, but rather was only a traffic stop which was temporary and conducted in public view. The United States Supreme Court has stated the "non-coercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Pennsylvania v. Bruder*, 488 U.S. 9, 10, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988)(quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). Leno's undisputed request to consult an attorney was prior to arrest or custodial interrogation.

[¶ 19] Although it was not necessary for the officer to restrict Leno's access to his attorney, we hold doing so did not violate Leno's right to counsel because the statutory right to counsel does not attach until after arrest. We reverse the order suppressing the evidence for the reasons stated by the trial court, but we remand for a factual finding of whether or not Leno invoked his right to counsel after he was arrested and prior to consenting to the ultimate evidentiary chemical test.

[¶ 20] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.